sary to promote the administration of justice. But he should have reopened the case for its introduction or let it be introduced as evidence in chief subject to rebuttal.

The rulings of the court were highly prejudicial to defendant's rights.

. For the reasons assigned, the verdict and sentence are set aside and the case is remanded for retrial.

BRUNOT, J., dissents.

Judges per curiams dispose of the bills on which the opinion is based.

147 So. 5

**CALDWELL BROS. v. BOARD OF SUP'RS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE et al.**

No. 32233.

Feb. 11, 1933.

Wylie M. Barrow, of Baton Rouge, for appellants.

C. C. Bird, Jr., of Baton Rouge, for appellees.

LAND, Justice.

On February 17, 1932, defendant board of supervisors entered into a contract with Caldwell Bros., a partnership engaged in the business of building contractor, to construct certain buildings and additions to buildings at the Louisiana State University.

Plaintiff executed and completed the contract. The work was accepted by the University, and, in part payment of the price due, plaintiff accepted certificates of indebtedness issued by the board of supervisors of the Louisiana State University and Agricultural and Mechanical College for the sum of $284,393.13.

Defendant board of supervisors has authorized the president of the University to issue, besides those held by Caldwell Bros., plaintiff, additional certificates, notes, bonds, and other evidences of indebtedness, to be liquidated out of the future revenues of the University not especially dedicated to its maintenance and support, and has not authorized the setting aside by preference over the certificates to be issued of any sum of money for the payment of the pre-existing certificates held by Caldwell Bros., plaintiff.

On August 22, 1932, defendant board of supervisors adopted a resolution authorizing the president of the University to apply, on behalf of the University and its board, to the Reconstruction Finance Corporation at Washington, D. C., for a loan of $1,250,000, for the purpose of financing the cost of nu-

merous repairs, improvements, and buildings at the University.

The president of the University was further authorized by the resolution to set aside annually all profits from the Athletic Association, the dormitories, the cafeterias, rentals received for the apartments at the Old University campus, matriculation fees, and such other revenues as may be received by the University from any source whatever, exclusive of ad valorem taxes, or other revenues exclusively dedicated or appropriated by the Legislature for maintenance and support or other special objects, to the extent necessary to secure and provide for the payment of the loan, and it is admitted that the funds to be so dedicated are adequate for the repayment of the loan.

The loan to be made by the Reconstruction Finance Corporation is the only one contemplated by defendant board, and the purpose of this loan is to construct buildings and structures necessary for the proper carrying on of the objects for which the University and its board are created.

1. Caldwell Bros., in their capacity as taxpayers, and as owners of the certificates of indebtedness issued to them by the University and its board, have brought the present suit to restrain defendant board of supervisors and its officers from issuing or attempting to issue, or authorizing the issuance of certificates, notes, bonds, or other evidences of indebtedness in payment of any contract with, or for any work done for the University, or attempting to issue or issuing any certificates, notes, bonds, or other evidences of indebtedness in payment of any contract, or for any work done or to be done at and

for the University, to be liquidated out of the future revenues of the University, dedicated by law to the support, maintenance, and improvements of the University, as well as funds derived from its various facilities, such as the athletic department, rentals from dormitories, and rentals from other properties owned by the University.

This suit is more particularly aimed and directed at the proposed action of defendant board in borrowing the sum of $1,250,000, from the Reconstruction Finance Corporation of the United States to be used in the immediate construction of certain buildings, useful and necessary in the conduct of the legitimate business of the University, the evidences of indebtedness to be issued by the board to be retired out of certain funds properly applicable to such construction.

Plaintiff attacks the issuance of the proposed evidences of indebtedness by the board and its officers in this case as unconstitutional, null, and void for the following reasons:

(1) That neither the University nor its board is authorized to issue certificates of indebtedness, for the use and benefit of the University, to be secured and paid out of the funds dedicated to the support and maintenance of the University, or other funds in the hands of, or under the control of, the University or its board.

(2) That neither defendant board nor its president has any power or authority to contract or authorize the contracting of any debt or liability on behalf of the state.

(3) That the act creating defendant board of supervisors did not confer upon the board

power to authorize the contracting of any debt or liability on behalf of the state.

(4) That, in the event it should be held that the act creating the board of supervisors did confer upon the board the power to authorize the contracting of any debt or liability on behalf of the state, and that the certificates in question are debts of the state, to be paid by the state, then Act No. 7 of 1921 (Ex. Sess.), creating the board of supervisors and defining its powers, is unconstitutional, null, and void, in so far as it purports to authorize the board to issue certificates of indebtedness or otherwise to incur debts or liabilities on behalf of the state, to be paid for out of funds dedicated to the support and maintenance of the University, or any other funds in the hands of, or under the control of, the University or its board of supervisors, in violation of article 4, § 2, of the Constitution of 1921.

(5) That the certificates, notes, bonds, or other evidences of indebtedness, unless authorized, ratified, and approved by the Legislature, are illegal, invalid, unconstitutional, null, and void, for the reason that they are and will be issued without authority in law, and in violation of article 4, § 12, of the present Constitution.

2. The Louisiana State University and Agricultural and Mechanical College was originally created by Act No. 145 of 1876, which was amended by Act No. 7 of 1921 (Ex. Sess.).

Section 15 of the Act No. 145 of 1876 contains the following provision: "That the board of supervisors shall be charged with the purchase of all necessary grounds and land for the purpose of the University and Agricultural and Mechanical College, *and with the purchase or erection, or both, as may be necessary, of all requisite buildings, workshops, laboratories and other * * * contrivances, needed for the academic, military, industrial, or other departments of the University and Agricultural and Mechanical College*, and with the purchase of all necessary supplies or articles for the use of the University and Agricultural and Mechanical College. * * *"* (Italics ours.)

Section 1 of Act No. 7 of 1921 (Ex. Sess.) provides that the board of supervisors of the University *shall be a body corporate* with the right "to sue and be sued in courts of justice, and in general *to do all acts* for the benefit of the Louisiana State University and Agricultural and Mechanical College, which are incident to bodies corporate." (Italics ours.)

█ The board of supervisors is therefore *a distinct legal entity*, and a debt or liability of the board is not a debt or liability on behalf of the state.

This court has repeatedly held that levee boards, which are state agencies, are entities separate from the state, and that bonds issued by these boards were not bonds of the state, but were bonds issued for the exclusive purposes and benefit of the boards. Board of Com'rs of Caddo Levee District v. Pure Oil Co., 167 La. 811, 120 So. 373; Board of Commissioners of Tensas Basin Levee District v. Earle, 169 La. 565, 125 So. 619; Munson v. Board of Commissioners of Atchafalaya Levee District, 43 La. Ann. 15, 8 So. 906; Excelsior Planting & Manufacturing Co. v. Green, Tax Collector, 39 La. Ann. 459, 1 So. 873.

■■ 3. The board of supervisors of the Louisiana State University, being a body corporate, naturally has corporate capacity and corporate power to borrow money and incur debt. As a general rule the charter or statutory power "to do any act" implies the power to borrow the necessary means for doing the act.

"In fact, it may be laid down as a general rule that whenever a charter of a corporation gives it the power expressly or impliedly *to purchase property or otherwise incur a debt*, it has the implied power, in the absence of restriction in its charter, to borrow money to pay for the property or to pay the debt." (Italics ours.) Fletcher, Cyc. of Corp., c. 25; Thompson on Corporations (3d Ed.) chap. 76.

As already observed, defendant board of supervisors has express statutory authority "to do all acts for the benefit" of the University, and is expressly charged "with the purchase or erection, or both, as may be necessary, of all requisite buildings," etc.

■Under these statutory grants, defendant board clearly has the power to borrow money from the Reconstruction Finance Corporation, and, necessarily, to issue certificates in repayment of same for the purpose of construction of the necessary and useful buildings in question. The board does not intend, by any means, to pay these certificates out of its alimony from ad valorem taxes, or any funds it may receive in the future dedicated by law to a particular purpose, but entirely from profits from the Athletic Association, the dormitories, the cafeterias, rentals received for the apartments at the Old University campus, matriculation fees, etc.,

which, it is admitted, are adequate for the repayment of the loan from the Reconstruction Finance Corporation.

■ It is therefore plain that neither section 1 of Act No. 7 of 1921 (Ex. Sess.), nor section 15 of Act No. 145 of 1876 authorizes defendant board to contract any debt or liability *on behalf of the state*, in violation of article 4, § 2, of the present Constitution (1921).

■ 4. Nor is the proposed action of the board in violation of section 12 of article 4 of the Constitution of 1921, which reads that: "The funds, credit, property or things of value of the State or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private."

■ The purpose of this article was not to hamper state agencies or boards in the exercise of their proper functions, or in the conduct of their legitimate affairs, but to put an end to the practice of the Legislatures to pledge the credit of the state to aid private enterprises. Benedict v. City of New Orleans, 115 La. 655, 39 So. 792.

In Excelsior Planting & Manufacturing Co. v. Green, 39 La. Ann. 455, 1 So. 873, 877, in passing upon articles 44 and 56 of the Constitution of 1879, which correspond to sections 2 and 12 of article 4 of the Constitution of 1921, with reference to an act of the Legislature authorizing a board of levee commissioners to issue bonds, this court said: "As to articles 44 and 56, they are equally inapplicable, because the act does not 'contract, or authorize the contracting of, any debt or liability on behalf of the state;' and it does not loan, pledge, or grant the funds

or credit or property of the state, or of any political corporation thereof, 'to or for any person or persons, association or corporation, public or private.' The bonds authorized to be issued by the corporation are issued *for its own exclusive purposes and benefit."* (Italics ours.)

■ The certificates of indebtedness to be issued by defendant board in this case are for the exclusive purpose and benefit of the University, and neither Act No. 7 of 1921 (Ex. Sess.), nor Act No. 145 of 1876, violates in any particular section 12 of article 4 of the present Constitution.

5. In conclusion, the amendment to the Constitution of the state, adopted November 8, 1932, Act No. 122 of 1932, authorized the board of liquidation of the state debt to issue bonds against the surplus of the state bond and interest tax fund for the purpose of paying, among other things, "the outstanding indebtedness of Louisiana State University and Agricultural and Mechanical College as evidenced by certificates of indebtedness issued under authority of its Board of Supervisors, amounting to the sum of $1,-000,000.00, which said indebtedness of the Board of Liquidation of the State Debt and said indebtedness of the Louisiana State University and Agricultural and Mechanical College *are hereby validated and declared to be the legal and binding indebtedness of the State* of Louisiana."

■ There is no provision in the present Constitution, nor in Act No. 7 of 1921 (Ex. Sess.), nor in Act No. 145 of 1876, creating and defining the powers of the board of supervisors of the University, requiring that evidences of indebtedness issued by the board shall be ratified by the Legislature.

We have seen that such ratification is entirely unnecessary, as the acts of 1921 and 1876 themselves contain plenary power delegated to the board to issue evidences of indebtedness, for the purpose of constructing or purchasing any building needed by the University.

■ The plain purpose of the constitutional amendment of 1932, see Act No. 122 of 1932, was to have the state assume the outstanding indebtedness of the University of the state, for which the state's credit would not otherwise have been legally or morally obligated.

We do not concur, therefore, with able counsel for plaintiff in the view that this constitutional amendment recognized an indebtedness of the University as being ipso facto an indebtedness of the state.

Had the indebtedness already been an indebtedness, authorized or unauthorized, of the state, there would not have been any reason for declaring the certificates of the University to be the legal and binding indebtedness of the state, and the lawmakers would have had nothing more to do than recognize the validity of the indebtedness and provide the issuance of bonds for its payment.

The rule nisi issued herein was recalled, and the injunction prayed for was denied, and plaintiff's demands were rejected and this suit dismissed at plaintiff's cost in the lower court.

We find no error in the judgment appealed from by plaintiff.

Judgment affirmed.