# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 23-398


GLENN GOUDEAU

VERSUS

AVOYELLES PARISH POLICE JURY


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2023-1077-B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

**********

## D. KENT SAVOIE
## JUDGE

**********

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Sharon Darville Wilson, Judges.


**MOTION TO STRIKE GRANTED.**
**VACATED AND REMANDED.**


Stacy C. Auzenne
Auzenne Law Firm, LLC
P. O. Box 11817
Alexandria, LA 71315
(318) 880-0087
COUNSEL FOR DEFENDANT-APPELLANT:
    Avoyelles Parish Police Jury



Dannie P. Garrett, III
Attorney at Law
635 Main St., Unit # 3
Baton Rouge, LA  70801
(225) 382-0333
COUNSEL FOR PLAINTIFF-APPELLEE:
    Glenn Goudeau

**SAVOIE, Judge.**

The Avoyelles Parish Police Jury (APPJ) appeals the judgment of the trial court granting a Writ of Mandamus and making it peremptory that ordered the APPJ to call an election for October 14, 2023, for the purpose of electing members of a home rule charter commission pursuant to La.R.S. 33:1395. Pursuant to a joint motion of the parties, we expedited this appeal for the purpose of issuing a ruling before July 11, 2023, the deadline for submission to the Louisiana Secretary of State's office of any issue or election that will be placed on the October 14, 2023 ballot.

## FACTS

Glenn Goudeau, a registered voter of Avoyelles Parish and a signatory of a petition submitted to the APPJ, filed a Petition for a Writ of Mandamus on May 10, 2023. He alleges in his petition for Writ of Mandamus that a petition to call for an election of a home rule charter commission was presented to Jamey Wiley, the Secretary-Treasurer of the APPJ, (the de facto clerk, as admitted by the APPJ) on March 2, 2023. The petition further alleges that the Registrar of Voters verified that the petition submitted to Wiley contained the signatures of more than ten percent of the electors of Avoyelles Parish.

Louisiana Revised Statute 33:1395 states:

A. Any parish or municipality may draft, adopt, or amend a home rule charter. The method to be used is the charter commission, which can either be appointed by the governing body or elected by the people.

B. A charter commission must be elected when the clerk of a municipality or parish is presented with a petition for the election of a home rule charter commission as provided in Article VI, Section 5(B) of the Louisiana Constitution of 1974 signed by not less than ten percent of the electors or ten thousand electors, whichever is fewer, who live within the boundaries of the affected municipality or parish as certified by the registrar of voters, and the governing authority of the municipality or parish shall call an election to elect

a commission to prepare and propose a home rule charter or alternate charter. The election of the commission shall be called by the governing authority of the municipality or parish and on the next date allowed under the provisions of R.S. 18:402 for a primary or general election, special election, or bond, tax, or other election but not less than one hundred twenty days after the petition is presented to the clerk. Any such election shall otherwise be held pursuant to and in accordance with the election law of the state.

Additionally, Louisiana Constitution Article 6, § 5, provides, in pertinent part:

Section 5. **(A) Authority to Adopt; Commission.** Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend a home rule charter in accordance with this Section. The governing authority of a local governmental subdivision may appoint a commission to prepare and propose a charter or an alternate charter, or it may call an election to elect such a commission.

**(B) Petition to Elect Commission.** The governing authority shall call an election to elect such a commission when presented with a petition signed by not less than ten percent of the electors or ten thousand electors, whichever is fewer, who live within the boundaries of the affected subdivision, as certified by the registrar of voters.

Goudeau further alleged that the next available election date is October 14, 2023, which is more than 120 days from the date the petition was submitted to the clerk. Goudeau alleges that on May 9, 2023, the APPJ considered a resolution to call for the election of a home rule charter commission but rejected the resolution by a vote of four to five. Goudeau argued that the calling of an election pursuant to La.R.S. 33:1395 is mandatory and purely ministerial, and that the court should issue an alternative Writ of Mandamus directed to the APPJ pursuant to La.Code Civ.P. art. 3865. Goudeau also sought court costs and attorney fees for this action.

Goudeau concluded his petition by praying that the court issue an alternative Writ of Mandamus ordering the APPJ to call an election for home rule charter commissioners on October 14, 2023, or to hold a hearing at which the APPJ can show cause why the Writ of Mandamus should not be made peremptory. Attached to Goudeau's petition were three documents:

2

(1) the letter from Gloria Moreau, the Registrar of Voters of Avoyelles Parish, certifying that more than ten percent of the electors signed the petition to elect a home rule charter commission, dated March 2, 2023;

(2) the list of election dates for 2023; and

(3) a certified copy of the resolution considered and rejected by the APPJ on May 9, 2023, to call for an election of home rule charter commissioners.

The trial court issued a ruling on an alternative Writ of Mandamus on May 11, 2023, and ordered APPJ to appear on May 22, 2023, to show cause why the Writ of Mandamus should not be made peremptory. The hearing was rescheduled to May 26, 2023.

On May 23, 2023, APPJ filed an Exception of No Cause of Action and/or No Right of Action. APPJ argued that the signatures certified by the Registrar of Voters as valid electors are defective for the following reasons:

(1) mandatory information, such as date of birth and precinct and ward number, are missing for the 2,455 certified signatures, citing La.R.S. 18:3;

(2) the signed petitions were presented on five dates between January 30 and March 1, 2023, and are short of the requisite number of signatures;

(3) organizers of the home rule charter commission petition paid people to gather signatures;

(4) the petitions lack date and time stamps from the Registrar of Voters office;

(5) the signatures lack a witness signature or the date of the witness signature does not correlate to the date of the voter's signature;

(6) three signatures were dated 6/12/22 but were not stamped by the Registrar of Voters office until January 30, 2023;

(7) some witness signatures were witnessed after the voter signed the petition;

(8) some witness signatures were illegible;

(9) some voter signatures were witnessed in advance of the voter signature; and

(10) some voter signatures were witnessed after receipt of the petition by the Registrar of Voters.

3

APPJ argued that its knowledge of these irregularities in the collection of the signatures, the form of the signatures and the petitions, and the timing of the signed petitions to the Registrar of Voters give it the discretion to reject the petition calling for an election of home rule charter commissioners. Thus, Goudeau could not state a cause of action or a right of action to seek a Writ of Mandamus, which only applies to a ministerial act that a public official lacks any discretion to perform.

APPJ sought dismissal of the Writ of Mandamus. Finally, APPJ sought court costs and attorney fees from Goudeau.

APPJ also filed an Answer to the Petition for Writ of Mandamus and Third Party Demand on May 25, 2023. In its answer, it alleged as affirmative defenses the same irregularities it listed in its exception, citing violations of La.R.S. 18:3 and Attorney General Opinions 09-26 and 01-71. It also maintained that it was within the APPJ's discretion as to the method of appointment of the members of the home rule charter commission.

In its third party demand, APPJ named as a defendant Gloria Moreau, the Avoyelles Parish Registrar of Voters, alleging that her certification of the signatures, which did not meet the legal requirements, caused the APPJ "considerable difficulties," including this lawsuit. APPJ sought to recover from Gloria Moreau the litigation costs associated with this mandamus action if it was successful in having the mandamus action dismissed. Alternatively, in the event that Goudeau prevailed, APPJ requested that all attorney fees, expenses, and costs awarded to Goudeau should be assessed to Ms. Moreau.

The trial court held a hearing on May 26, 2023. It denied the Exception of No Cause of Action and/or No Right of Action. After hearing evidence and arguments of counsel, the trial court found that the APPJ had a ministerial duty to call an election once its clerk, the Secretary-Treasurer of the police jury, received

certification of a sufficient number of signatures from the Registrar of Voters. The trial court made the Writ of Mandamus peremptory. The trial court further stated in open court that the APPJ had the ability to challenge the validity of the signatures collected by Ms. Moreau, and it had begun that process by filing its third party demand against Ms. Moreau as Registrar of Voters. The trial court did not allow counsel for Mr. Goudeau or the APPJ to question Ms. Moreau about her process for certifying the signatures on the petitions to elect home rule charter commissioners because she had been named a defendant in the third party demand filed the day before the hearing, she had not yet been served with the third party demand, and she was not represented by counsel.

While APPJ argued in the trial court that there were irregularities in the collection and certification of the signatures on the petition to elect a home rule charter commission, they introduced no evidence of any of the alleged irregularities into the record. Only the three attachments to Mr. Goudeau's petition were introduced into the record at the hearing. While Ms. Moreau testified that the petitions containing the signatures were attached to her letter to the clerk of the police jury, those documents are not in the record before us.

The trial court signed a judgment denying the exceptions and making the Alternative Writ of Mandamus peremptory on June 12, 2023. APPJ filed a notice of appeal, and the trial court signed an order of suspensive appeal on June 13, 2023, setting a return date of June 20, 2023, and ordered security in the amount of $10,000. On motion of the APPJ, the trial court vacated the bond requirement and amended its previous order to be a devolutive appeal on June 15, 2023.

## ASSIGNMENTS OF ERROR

On appeal, APPJ asserts five assignments of error:

1. The trial court did not consider the mandatory provisions of the Election Code, La.R.S. 18:3, in granting the Mandamus against the Avoyelles Parish Police Jury on the Home Rule Charter Commission Petition issue pursuant to La.R.S. 33:1395.

2. The trial court did not allow the Avoyelles Parish Police Jury to put on any evidence, call any witnesses, or cross-examine the petitioner's witnesses in opposition to the Mandamus proceeding filed by petitioner, Goudeau.

3. The method of gathering signatures on the "Petition" was left at various businesses without any witnesses to verify electors' signatures.

4. A Mandamus proceeding cannot compel an illegal act.

5. The organizers for the home rule charter commission paid people to obtain signatures on the "Petition", tantamount to vote buying.

## DISCUSSION

*Motion to Supplement the Record*

After this appeal was lodged in this court and we granted the joint motion for expedited consideration, APPJ filed a motion to supplement the record. The twenty-eight attachments that the APPJ sought to add to the record on appeal had not been introduced into the record in the trial court. These attachments included the original petitions that had been submitted to the registrar of voters, social media posts related to the petition for a home rule charter commission, and various letters. Mr. Goudeau filed an opposition to the motion to supplement the record, alleging that none of these documents had been introduced in the trial court, citing La.Code Civ.P. art. 2164. Mr. Goudeau also filed a motion to strike those portions of the APPJ brief that reference allegations or documents not introduced into the record in the trial court.

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P. art. 2164. "It is well-settled that appellate courts may not receive new evidence nor review evidence that is not in the record." *Irby v. Mancuso*, 16-78, p. 6 (La.App. 3 Cir. 9/28/16), 201 So.3d 413, 418,

*writ denied*, 16-2074 (La. 6/15/18), 257 So.3d 687 (citing *Shiver v. Lafayette City-Parish Consol. Gov't.*, 14-760 (La.App. 3 Cir. 12/10/14), 154 So.3d 789). Thus, we denied the motion to supplement the record in an order dated June 30, 2023, and we will not consider any of those materials in the disposition of this case. We likewise grant Mr. Goudeau's motion to strike those portions of the APPJ's brief which reference those materials.

*Writ of Mandamus*

"A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor." La.Code Civ.P. art. 3863. In *Julian-Robinson v. Lafayette Par. Sch. Bd.*, 11-712, p. 2 (La.App. 3 Cir. 11/2/11), 76 So.3d 656, 657, *writ denied,* 11-2643 (La. 2/10/12), 80 So.3d 479, this court stated:

> A writ of "mandamus is to be used only when there is a clear and specific legal right to be enforced or a duty that ought to be performed." *Bonvillian v. Dep't of Ins.,* 04-332, p. 4 (La.App. 1 Cir. 2/16/05), 906 So.2d 596, 599, *writ not considered,* 05-776 (La.5/6/05), 901 So.2d 1081. Further:
>
> > A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. LSA–C.C.P. art. 3863. However, a writ of mandamus may only be issued in cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. LSA–C.C.P. art. 3862. In mandamus proceedings against a public officer involving the performance of official duty, nothing can be inquired into but the question of duty on the face of the statute and the ministerial character of the duty he is charged to perform. *Plaisance v. Davis,* 2003–0767, p. 11 (La.App. 1st Cir.11/07/03), 868 So.2d 711, 718, *writ denied,* 2003–3362 (La.2/13/04), 867 So.2d 699.
>
> *Id.* at 598. Mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised. *Allen v. St. Tammany Parish Police Jury,* 96-938 (La.App. 1 Cir. 2/14/97), 690 So.2d 150, 153, *writ denied,* 97-599 (La.4/18/97), 692 So.2d 455.

7

A Writ of Mandamus is warranted when there is a ministerial duty that requires "no exercise of judgment or discretion, however slight, in their performance." *Hebert v. Abbey Healthcare Group, Inc.*, 94-1280, p. 4 (La.App. 3 Cir. 5/17/95), 657 So.2d 278, 280. "A ministerial duty is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." *Hoag v. State of Louisiana*, 04-857, p. 7 (La. 12/1/04), 889 So.2d 1019, 1024.

> A trial court's findings of fact in reaching a determination to issue a writ of mandamus is subject to the manifest error standard of review. [*Bernard v. Louisiana Testing & Inspection, Inc.*, 19-575 (La.App. 3 Cir. 2/5/20), 290 So.3d 239, *writ denied*, 20-393 (La. 6/3/20), 296 So.3d 1069] (citing *Hess v. M & C Ins., Inc.*, 14-962 (La.App. 3 Cir. 2/11/15), 157 So.3d 1200). Findings of fact by a trial court may not be set aside by an appellate court unless they are manifestly erroneous or clearly wrong. *Id*. Findings of fact based on credibility determinations are entitled to great deference. *Id*.

*Cureton v. Cureton*, 20-520, pp. 7-8 (La.App. 3 Cir. 10/13/21), ___ So.3d ___, ___ (2021 WL 4768707).

"[Q]uestions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the de novo standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute." *Zillow, Inc. v. Bealer*, 21-545, p. 8 (La.App. 3 Cir. 2/2/22), 333 So.3d 854, 859, *writ denied,* 22-378 (La. 5/10/22), 337 So.3d 908 (citing *Thibodeaux v. Donnell*, 08-2436 (La. 5/5/09), 9 So.3d 120).

In its first assignment of error, the APPJ argues that the requirements of La.R.S. 18:3 were not followed in soliciting and gathering signatures for the petition for the election of home rule charter commissioners. It states, in pertinent part:

> A. Notwithstanding any other provision of law to the contrary, every petition submitted to a registrar of voters for certification shall contain the following information:
>
>> (1) The handwritten signature of the voter who is signing the petition; however, if a person is unable to write, the incapacitated person shall affix his mark to the petition and

the person circulating the petition shall affix the name of the incapacitated person provided he does so in the presence of two witnesses who shall also sign their names as witnesses to the mark.

(2) The date the voter signed the petition.

(3) The signer's ward, precinct, and year of birth.

(4) The address at which the signer is registered to vote, including municipal number, apartment number, rural route, and box number.

(5) Name of the signer either typed or legibly written.

(6) Name of the person who witnessed and who obtained the signature.

(7) Date on which the person witnessed and obtained the signature.

The APPJ argues that the provisions of La.R.S. 18:3 are mandatory, citing Louisiana Attorney General Opinions and jurisprudence. There is no dispute that this provision of the election code is applicable to a petition for an election of home rule charter commissioners pursuant to La.R.S. 33:1395. Further, this court has found the requirements of La.R.S. 18:3 must be strictly construed. *Cowan v. Ensminger*, 96-955 (La.App. 3 Cir. 7/23/96), 677 So.2d 1127, *writs denied*, 96-1946, 96-1961 (La. 8/1/96), 677 So.2d 449.

The APPJ, however, cites no evidence in the record before us on appeal to support its claim that the petitions do not meet the requirements of La.R.S. 18:3. In fact, the APPJ introduced no evidence in the proceeding below to prove its allegations. Instead, the APPJ cites documents attached to its motion to supplement the record on appeal, including copies of the petition. As we have already determined, we cannot consider that evidence to support its allegations. Thus, on the showing made in the record before us, this assignment of error lacks merit.

In its second assignment of error, the APPJ argues that the trial court did not allow the APPJ to put on any evidence, call any witnesses, or cross-examine the Registrar of Voters, Ms. Moreau, in the hearing below. After reviewing the transcript of the hearing, we find no ruling of the trial court that disallowed counsel for the APPJ to introduce evidence or call witnesses. The trial court did limit the questions that counsel for either party were allowed to ask Ms. Moreau. While counsel for Mr. Goudeau was asking Ms. Moreau questions about the letter she sent to the secretary of the police jury certifying the number of signatures on the petition on direct examination, the following colloquy occurred:

> BY MR. GERRETT [Counsel for Mr. Goudeau]:
> And Ms. Moreau, when you were ... what role did you play with regard to preparing that document?
>
> A. I was tasked with looking at the signatures on the petition, making sure that the signatures were indeed the signatures of the person that signed that ....in that space.
>
> Q. O.K.
>
> A. In other words, making sure that that was a ... indeed a registered voter in Avoyelles parish and that their signature sufficiently matched the record that we had on file.
>
> Q. And did you certify all the signatures that were on the petition?
>
> BY THE COURT:
> Mr. ... hold on, Ms. Moreau. Before we go further with this testimony ...
>
> BY MR. GERRETT:
> O.K.
>
> BY THE COURT:
> I'm somewhat concerned. Ms. Moreau in her capacity of Registrar of voters has been now sued as of yesterday in this proceeding. And I would hesitate to require her to provide any testimony without benefit of counsel since she is a party to the lawsuit now. She is not a party to your mandamus action, very simply the mandamus action alleges that she received a petition, she reviewed it, as her job. She certified it and that certification was presented to the Avoyelles Parish Police Jury. To therefore do a ministerial act.

10

Whether or not she did her job right or wrong is not the issue in the mandamus. The issue in the mandamus is did the Avoyelles Parish Police Jury get a certification from the Registrar of Voters and did they then act as required by law. That's the issue.

BY MR. GERRETT:
Yes, sir.

BY THE COURT:
And what ends up being confusing since the lawsuit against her is the cart after the horse is if the mandamus were to be issued and the proceeding against the registrar reduced the number of voters on the petition to below the amount necessary the ten per cent amount, what happens? You know the cart and the horse aren't where they belong right now. And I hesitate to require Ms. Moreau to testify to anything she did other than confirming the certification without benefit of counsel. Do you have counsel, Ms. Moreau?

A. No, since I was not subpoenaed or ...

BY THE COURT:
Were you served with the lawsuit yesterday? You haven't been served yet?

A. This is the first I heard of that.

BY THE COURT:
You didn't know you were sued?

A. No.

Counsel for Mr. Moreau then concluded his direct examination by asking Ms. Moreau if she signed the letter addressed to the secretary of the police jury. She answered in the affirmative.

Counsel for the APPJ objected to the limitation on his ability to cross-examine Ms. Moreau. A discussion then occurred about whether the hearing on the mandamus was the proper forum to present evidence of the reason for the police jury's failure to act after it was presented with the letter from the Registrar of Voters certifying the requisite number of signatures on the petition to elect home rule charter commissioners. The trial court noted that it had not yet seen the third party demand

11

filed against Ms. Moreau since it was filed only the day before the hearing. The

discussion concluded with the following colloquy:

> BY THE COURT:
> The law says here police jury, here registrar of voters I'm certifying there's more than ten per cent this law says do this, do it. Police jury, do it. You can then contest it like you're doing now. But how can the police jury say well when we got that letter that certification from the registrar we believed that she messed up, so we're not going to do what the law tells us to do because of what we believe, hasn't been proven yet. And if it's proven, so be it. But we believe that ward and precinct wasn't in this, this wasn't listed and there are under ten per cent. So we're going to disregard her certification you can't do that.
>
> BY MR. AUZENNE [Counsel for the APPJ]:
> That's not how it happened, Judge.
>
> BY THE COURT:
> That's ...
>
> BY MR. AUZENNE:
> The petition was presented with her letter and on its face it had missing mandatory information; ward, precinct number, witnesses were wrong. There were defects throughout.
>
> BY THE COURT:
> Ms. Moreau, do you wish to testify about everything that happened and didn't happen or do you wish to have benefit of counsel?
>
> A. I think I would probably be better if I had my counsel.
>
> BY THE COURT:
> Yes, and you have not been served yet?
>
> A. No. I'm here just as ... to provide information.
>
> BY THE COURT:
> All right. So we need to get you served so your time delays can start on your response. But you know the way I see it is very simple, police jury was presented with a petition not that, I'm sorry. With a certification from the registrar and they had something they had to do and they didn't do it and their reasons for not doing it I understand but until that reason is proven, how can you just say ah, I'm not going to do it.
>
> Counsel for the APPJ was then given an opportunity to cross examine Ms.

Moreau:

> Q. Well the simple question to Ms. Moreau were the were the petitions actually attached to your certification letter?

BY THE COURT.
Now you can answer that.

A. Yes, they were.

While the APPJ argued that the petitions were noncompliant with La.R.S. 18:3 on their face, at no point did they seek to introduce those petitions (or any other documents) into evidence or proffer them into the record. The APPJ did not call any witnesses to support its claim that the members of the police jury rejected the petitions and refused to call an election for home rule charter commissioners because of the irregularities on the face of the petitions.

The third assignment of error raised by the APPJ must fail for the same reason as the first. While the law cited by the APPJ accurately explains that certain methods of collecting signatures are prohibited by the election code, there is no evidence presented in the trial court record to support its allegations.

In its fourth assignment of error, the APPJ argues that the police jury acted in its discretion to refuse to hold an election because of the failure of the petitions to conform to the requirements of La.R.S. 18:3. To require the APPJ to call an election, it argues, is tantamount to requiring it to perform an act it knows is illegal. Again, the record before us does not support the claims made in this assignment of error. This assignment of error lacks merit.

The fifth assignment of error alleging illegal practices in the collection of signatures tantamount to vote buying is comparable to the first and third assignments of error. The law cited by the APPJ is undoubtedly correct, but there is no evidence in the record for us to consider whether the allegation is true. Unlike the first assignment of error, the allegations in this assignment are not readily apparent from a review of the signed petitions, instead relying on social media posts to support the claims. This assignment of error lacks merit on the record before us.

13

In the course of our review of the proceedings below under a de novo standard, we do find legal error in the interpretation of La.R.S. 33:1395. The APPJ argues that the failure of Mr. Goudeau to introduce the petitions into the record is fatal to its Petition for a Writ of Mandamus. It argues that the signed petitions are necessary for the court to determine if the Writ of Mandamus should be made peremptory. Thus, they argue that without the signed petitions, Mr. Goudeau cannot meet his burden of proving entitlement to mandamus. We agree.

To prove entitlement to a Writ of Mandamus, Mr. Goudeau must show that the requirements of La.R.S. 33:1395 were met. Section B requires that the governing authority must be "presented with a petition for the election of a home rule charter commission as provided in Article VI, Section 5(B) of the Louisiana Constitution of 1974 signed by not less than ten percent of the electors or ten thousand electors, whichever is fewer, who live within the boundaries of the affected municipality or parish as certified by the registrar of voters." The letter of certification of the Registrar of Voters is insufficient to meet this burden of proof—the petitions themselves are a necessary element of proof for Mr. Goudeau to show that he is entitled to the relief he seeks. We find, therefore, that the trial court legally erred when it made the Writ of Mandamus peremptory. We vacate the judgment of the trial court and remand for further proceedings. *See* La.Code Civ.P. art. 2164.

<u>CONCLUSION</u>

The judgment of the trial court is vacated. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to the appellee, Glenn Goudeau.

**MOTION TO STRIKE GRANTED.**

**VACATED AND REMANDED.**

14